**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARLENE SCHUMACHER, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:18-cv-8087 |
| ) | |
| v. ) | Hon. Sharon Johnson Coleman |
| ) | |
| VILLAGE OF ALSIP, ) | Mag. Judge M. David Weisman |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S FIRST MOTION TO COMPEL DISCOVERY**

Pursuant to Rules 37 and 34 of the Federal Rules of Civil Procedure, and in accordance with the Court's July 2, 2019 order [Doc. 28], Plaintiff, Marlene Schumacher, by and through her attorneys, hereby moves the Court for entry of an order compelling Defendant, Village of Alsip ("the Village"), to produce certain documents responsive to Plaintiff's First Request for Production to Defendants, which the Village asserts are privileged. In support of her motion, Schumacher states as follows:

**PROCEDURAL BACKGROUND**

1. Schumacher served the Village with her First Request for Production to Defendant on April 12, 2019. A copy of that document is attached here as Exhibit 1.

2. The Village served its Objections and Responses to Schumacher's request on June 10, 2019. The Village asserted attorney-client privilege over some documents in response to requests nos. 5, 6, 7, 8, and 9. A copy of that document is attached here as Exhibit 2.

3. In connection with these assertions of privilege, the Village served Schumacher with a privilege log on June 10, 2019, identifying various documents for which the Village

1

asserted "attorney/client and/or deliberative process privileges." A copy of that document is attached here as Exhibit 3.

4. Counsel for Schumacher noted during a status call on July 2, 2019, that certain documents had been withheld from production based on asserted privileges, and that Schumacher was determining whether she would challenge any of those assertions. The Court ordered the parties to conduct any Rule 37.2 conference by July 26, 2019, and ordered Schumacher to file any motion relating to privilege issues by August 16, 2019. [Doc. 28].

5. Pursuant to Local Rule 37.2, counsel for the parties have conferred regarding this dispute, in an attempt to resolve the dispute or to at least narrow the scope of the documents at issue. Specifically, Matt Pierce, counsel for Schumacher, sent an email correspondence to Michael Cainkar, counsel for the Village, on July 24, 2019, raising challenges to the deliberative process and attorney-client privileges asserted by the Village and providing supporting authorities.

6. Mr. Pierce and Mr. Cainkar discussed these challenges in person on July 25, 2019, after Schumacher's deposition, and agreed to meet in person the following week to continue to confer.

7. Mr. Pierce and Mr. Cainkar met in person on July 31, 2019, to discuss each document being withheld based on asserted privilege. On August 5, 2019, Mr. Cainkar provided Mr. Pierce with redacted copies of some of the documents being withheld, which were designated "attorney's eyes only," along with further description of the basis for the Village's asserted privileges.

8. As a result of these discussions, Schumacher has identified certain documents which do appear to be fully protected from disclosure, or which do not appear to include

information of which Schumacher has a particularized need in this litigation; those documents are excluded from this motion. Schumacher now moves for this Court to compel the Village to produce unredacted copies of the documents set forth below.

### DOCUMENTS AT ISSUE

- 11/20/2017 – Written minutes of Village Board executive session discussing the initial proposal from Schumacher's labor union, MAP, regarding the closure of the Village's 911 center and the elimination of Schumacher's previous position with the Village. (No redacted copies produced).

- 12/18/2017 – Written minutes of Village Board executive session discussing MAP's first proposed memorandum of understanding ("MOU") regarding the closure of its 911 center and the elimination of Schumacher's previous position with the Village. (No redacted copies produced).

- 1/21/2018 – 1/22/2018 – Chain of emails discussing MAP's second proposed MOU regarding the closure of its 911 center and the elimination of Schumacher's previous position with the Village, which included proposal that "RCO Marlene Humphrey shall be allowed Village post-retirement health insurance at the cost of 15% of premium." These emails appear to include Village's finance director/former human resources director discussing his reasons for opposing the inclusion of such language. (Redacted, "attorney's eyes only" Docs. 1165-1170).

- 1/24/2018 – Continuation of email chain discussing MAP's second proposed MOU, forwarded to Village's chief of police and apparently describing Village's finance director's opposition to inclusion of language relating to Marlene Schumacher in MOU. (Redacted, "attorney's eyes only" Doc. 1171).

- 1/24/2018 – Continuation of email chain discussing MAP's second proposed MOU, including subsequent message from Village attorney to Village's mayor, finance director, chief of police, and head of HR on 1/24/2018, apparently describing Village's position regarding the inclusion of language relating to Marlene Schumacher in MOU. (Redacted, "attorney's eyes only" Docs. 1172-1173).

- 2/4/2018 – Email from Village's mayor to Village attorney, chief of police, and finance director, apparently stating mayor's position regarding the inclusion of language relating to Marlene Schumacher in MOU. (Redacted, "attorney's eyes only" Docs. 1174-1177).

- 2/5/2018 – Email from Village's chief of police to Village attorney, mayor, and finance director, identifying Marlene Schumacher by name, age, and years of service, then apparently discussing Village's position regarding the inclusion of language relating to Marlene Schumacher in MOU. (Redacted, "attorney's eyes only" Docs. 1178-1179).

- 2/5/2018 – Written minutes of Village Board executive session discussing MAP's second proposed MOU regarding the closure of its 911 center and the elimination of Schumacher's previous position with the Village. (No redacted copies produced).

- 8/7/2018 - 8/8/2018 – Chain of emails between Village's finance director, attorney, HR representative, and mayor, discussing Schumacher's request for IMRF benefit protection leave, including specifically email from finance director on 8/8/2018 in which he appears to state his opinion on Schumacher's request to other apparent decision makers. (Redacted, "attorney's eyes only" Docs. 1180-1183).

- 8/7/2018 - 8/8/2018 – Chain of emails between Village's finance director, attorney, HR representative, and mayor, discussing Schumacher's request for IMRF benefit protection leave, including specifically email from mayor on 8/8/2018 in which he appears to state his opinion on Schumacher's request to other apparent decision makers. (Redacted, "attorney's eyes only" Doc. 1184).

- 10/10/2018 - 10/15/2018 – Chain of emails between Village's HR representative, attorney, mayor, and finance director, forwarding an email from Marlene Schumacher inquiring about her retiree health insurance benefits in advance of her final date of employment with the Village and apparently discussing the Village's position with respect to granting her certain benefits. (Redacted, "attorney's eyes only" Docs. 1187-1189).

- 10/15/2018 - 10/23/2018 – Chain of emails between Village's HR representative, attorney, mayor, finance director, and chief of police, forwarding emails from Marlene Schumacher inquiring about her retiree health insurance benefits in advance of her final date of employment with the Village and apparently discussing the Village's position with respect to granting her certain benefits. (Redacted, "attorney's eyes only" Docs. 1192-1195).

- 10/29/2018 – Written minutes of Village Board executive session discussing Marlene Schumacher's retirement health insurance benefits. (No redacted copies produced).

**ARGUMENT AND AUTHORITIES**

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006) (citing *Rubin v. Islamic Republic of Iran,* 349 F.Supp.2d 1108, 1111 (N.D. Ill. 2004)). "Thus, the scope of discovery should be broad in order to aid in the search for truth." *Id.* (citing *Tice v. American Airlines, Inc.,* 192 F.R.D. 270, 272 (N.D. Ill. 2000)). Courts look unfavorably upon restrictions placed upon the discovery process, and "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish,* 235 F.R.D. at 450; *See also United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997) ("The party seeking to invoke the privilege bears the burden of proving all of its essential elements.").

In its privilege log, the Village has asserted that each of the documents at issue here are protected from disclosure under the deliberative processes privilege and/or the attorney-client privilege. (Ex. 3). The Seventh Circuit has stated that the deliberative processes privilege

> protects communications that are part of the decision-making process of a governmental agency. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–152, 95 S.Ct. 1504, 1516–1517, 44 L.Ed.2d 29. Since frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure. *Id.* at 151, 95 S.Ct. at 1516–17. Communications made subsequent to an agency decision are, however, not similarly protected. *Id.* at 152, 95 S.Ct. at 1517. The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality. *Cf. Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 868 (D.C.Cir.1980) (the privilege should be applied "as narrowly as consistent with efficient government operation"); *Black v. Sheraton Corp. of America,* 564 F.2d 531, 545 (D.C.Cir.1977).

*United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993).[1]

Accordingly, this privilege only applies to communications within a governmental agency that are "predecisional" and "deliberative," and even where this privilege applies, courts must then determine whether the party seeking disclosure has demonstrated a "particularized need" for the information that outweighs the need for confidentiality. *See Sronkoski v. Schaumburg School District*, 2009 WL 1940779 (N.D. Ill. 2009) (former employee bringing ADA claim against public employer was entitled to discover closed-session board meetings where she asserted a particularized need for materials because they *may* reflect her employer's true motive and basis for terminating her).

In this case, even it were assumed that each of the documents at issue here were predecisional and deliberative communications – which the Village carries the burden of proving – Schumacher would still be entitled to discover these documents because she has a particularized need for any documents that may reflect the Village's decisionmaking and its true motivation behind deciding not to hire her for the position she applied for, as well as various other decisions intended to prevent Schumacher from reaching the age of 55 while employed by the Village, and thus to deprive her of retiree health insurance benefits.

In her Complaint, Schumacher alleges that the Village rejected her application for the position of Full Time Records Technician – Traffic because of her age (54), and it instead selected a substantially younger and less qualified person for that position, thereby discriminating against Schumacher on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"). [Doc. 1 ¶ 53]. She further alleges that the Village's proffered reason for failing to hire her was pretext for discrimination. [Doc. 1 ¶ 54]. Additionally,

---

[1] The Illinois state law open meetings privilege is not applicable in federal courts. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 451 (N.D. Ill. 2006).

Schumacher alleges that the Village's refusal to consider her application for this position was part of a pattern of behavior intended to prevent her from reaching the age of 55 during her employment with the Village, which behavior included "expediting the date of consolidation for its 911 Dispatch Center several months before the consolidation deadline; refusing to negotiate or include a provision in the memorandum of agreement allowing Schumacher to receive retiree health insurance; failing to post the job opening; and rejecting Schumacher's request to extend her effective date of employment through May [2019]." [Doc. 1 ¶ 56].

Based on the nature of these claims, Schumacher has a particularized need to discover documents which reflect the Village's true motivation in refusing to consider her application, as well as the other decisions which are alleged to constitute a pattern of discriminatory behavior. As was the case in *Sronkoski*, 2009 WL 1940779, this includes closed-session Village Board meetings in which these decisions were discussed, debated, or made. Each of the documents identified in this motion expressly relate, or appear to relate, to the Village's decisions relating to Schumacher's employment and the Village's true motive in refusing to continue her application past the age of 54. They also represent the Village's actual decision-making process at the time these decisions were made, and these documents are likely the only way for Schumacher to discover contemporary records of these decisions. Even assuming that all of these documents are in fact covered by the deliberative process privilege, Schumacher has a particularized need to review these communications, which outweighs any need for confidentiality.

Further, even if these communications also involved one or more attorneys for the Village, that does not immediately remove them from the realm of discoverable information. Where the purpose of a communication is to secure business advice, rather than legal advice, the attorney-client privilege does not apply. *See Acosta v. Target Corp.,* 281 F.R.D. 314, 321 (N.D.

7

Ill. 2012) ("The purpose of the communication must be the obtaining or providing of legal advice, not a business discussion."); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. 312, 316 (N.D. Ill. 2010) (the attorney-client privilege "does not, however, protect business decision advice, even when that business advice is rendered by an attorney or an attorney is one of those participating in the business decision.").

Additionally, if an attorney is included or copied on an email or other communication, but no request for legal advice is made, the privilege does not apply. *See Acosta,* 281 F.R.D. at 321; *In re Brand Name Prescription Drugs Antitrust Litigation,* No. 94 C 897, 1995 WL 663684 at *2 (N.D. Ill. Nov. 6, 1995) ("Parties may not create a privilege in otherwise nonprivileged business documents by 'funneling' or incidentally copying them to an attorney.") (citations omitted).

Here, the mere fact that a Village attorney was present at a closed-session Board meeting, or the mere fact that a Village attorney received an email communication, does not render that document absolutely protected from discovery. And to the extent that some portion of closed-session minutes depict bona fide legal advice, but also include discussions or statements from officials or officers of the Village, those portions of the minutes that are not wholly attorney-client privileged communications should be produced. Because the communications identified in this motion appear to relate to business decisions, they are not subject to the attorney-client privilege.[2] Accordingly, the Court should order the Village to produce these documents to Schumacher (subject to an in-camera review by the Court, as appropriate).

---

[2] As noted above, Schumacher does not seek the production through this motion of certain documents – including discussions with counsel regarding the Village's legal strategy with respect to Schumacher's charge of discrimination or the Village's legal strategy with respect to an unfair labor practice charge filed by MAP – which are likely protected from disclosure as attorney-client communications.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Marlene Schumacher, respectfully requests that this Court grant her motion; order the Village to submit the documents identified herein to the Court for an in-camera review, as necessary; and upon review, enter an order compelling the Village to produce unredacted copies of these documents to Schumacher, awarding Schumacher the reasonable fees and expenses incurred in making this motion pursuant to Fed. R. Civ. P. 37(a)(5); and granting Schumacher such other and further relief to which she may be justly entitled.

Dated August 15, 2019.

Respectfully submitted,

/s/ Matt Pierce
Joel D'Alba
Matt Pierce
Asher, Gittler, & D'Alba, Ltd.
200 W. Jackson Blvd., Suite 720
Chicago, IL 60606
312/263-1500 (phone)
312/263-1520 (fax)
jad@ulaw.com
mjp@ulaw.com

*Attorneys for Plaintiff*